IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| BERNARD MIMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 18-cv-7192 |
| ) | |
| THE CITY OF CHICAGO, KENNETH ) | Judge Steven Seeger |
| BOUDREAU, RICHARD PECK, ROBERT ) | Magistrate Judge Jeffrey Cole |
| MONTGOMERY, DANIEL MCNALLY, ) | |
| TED PRZEPIORA, MICHAEL MCDERMOTT, ) | |
| RAYMOND KAMINSKI, JEAN ROMIC, and ) | |
| JOHN CLISHAM, ) | |
| ) | |
| Defendants. ) | |

## RENEWED JOINT MOTION TO EXTEND DISCOVERY DEADLINES

Now Comes Plaintiff, BERNARD MIMS, by and through his undersigned counsel, and THE CITY OF CHICAGO, KENNETH BOUDREAU, RICHARD PECK, ROBERT MONTGOMERY, DANIEL MCNALLY, TED PRZEPIORA, MICHAEL MCDERMOTT, JEAN ROMIC, and JOHN CLISHAM, by and through their undersigned counsel, and hereby respectfully renews their request to seek an extension of the fact discovery deadline to August 30, 2021, or any other date that the Court deems appropriate. In support of this motion, the parties state as follows:

### INTRODUCTION

1. "Federal Rule of Civil Procedure 16(b) provides that a schedule should only be modified for good cause and by leave of the court." *Krukowski v. Omicron Technologies, Inc.*, No. 10 CV 5282, 2012 WL 3841491, at *3 (N.D.Ill. Aug. 29, 2012) "A party demonstrates sufficient good cause to alter the discovery deadlines established when it shows that, "despite their diligence, the established timetable could not be met." *Id.* (citing *Tschantz v. McCann,* 160

1

F.R.D. 568, 571 (N.D. Ind. 1995)). "In making a Rule 16(b) good-cause determination, the primary consideration for district courts is the diligence of the party seeking amendment." *Lukis, individually and on behalf of all others similarly situated, v. Whitepages Inc.*, 2021 WL 1600194, at *18 (N.D.Ill., 2021) (citing *Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011)).

2. On April 29, 2021, the Court denied the parties' Second Joint Motion to Extend Discovery Deadlines without prejudice and with the option to try again. Dkt. 109. While the undersigned are well aware of the various issues and unforeseen impediments that have arisen in relation to discovery into the circumstances surrounding the Baker homicide investigation, and the reasons why they have been unable to complete fact discovery in the timeframe set by the Court, they did not adequately explain them in their initial motion and appreciate the Court's willingness to allow them the opportunity to better explain their need for additional time to finish fact discovery.

3. For all of the reasons outlined below, the parties have been diligent in their discovery efforts, cannot meet the current timetable despite their efforts, and request additional time to complete fact discovery. No dispositive motion or trial dates have been set in this matter, and the only prejudice that would flow from a denial of an extension, would be to the parties themselves.

**BACKGROUND OF DISCOVERY**

4. Two years ago, when the parties proposed a fact discovery deadline of September 30, 2020, no one anticipated that (a) a global pandemic would occur causing disruptions, limitations on travel to locate and interview third-parties, and Plaintiff's prison to go on lockdown (although counsel did, like all other attorneys, quickly get used to Zoom depositions); and

2

(b) that a straightforward Section 1983 case would balloon into one involving a multijurisdictional investigation with multiple confidential informants, the involvement of the FBI, and numerous individuals, (other than Plaintiff, which he believes are important to his claims in this lawsuit), to investigate in relation to the Baker homicide and other Black Disciple crimes occurring in and around the same area and timeframe.

5. From the beginning, the parties worked diligently on early discovery matters; including, exchanging Rule 26(a) Disclosures amongst all parties; Plaintiff issued requests to the City of Chicago pursuant to the Freedom of Information Act to obtain the Defendants' Complaint Registry files, *see* Dkt. 55 at page 6 (outlining this procedure), Dkt. 59 (Defendants' Confidentiality Order entered); receiving, reviewing, and exchanging more than 55,000 pages of CR files for 404(b) purposes; serving and responding to written discovery requests; engaging in 37.2 discussions relating to the exchange of documents, which totaled approximately 10,000 pages of documents collectively between the parties, (excluding the above-listed CR Files) related to a criminal case from 20 years ago, all of which needed to be reviewed. During this timeframe the parties also took the depositions of the named defendants who were involved in the homicide investigation on the night that it occurred who set the stage for the CPD's initial response to the Baker homicide as well as non-defendant officers Det. Stehlik and Officer Bartik.

6. During this timeframe, the Individual Defendants issued document subpoenas to the following third-party agencies: Attorney Registry & Disciplinary Committee; Cook County State's Attorney's Office; Plaintiff's Criminal Defense Attorney; Plaintiff's Post-Conviction Attorney; FCI Pekin; Stateville Correctional Center; Pontiac Correctional Center; Office of the State Appellate Defender; DeKalb County State's Attorney's Office; and the DeKalb County

Clerk. Plaintiff served early subpoenas on: The Cook County Department of Corrections; Cermak Medical Center; and Stroger Hospital.

7. By August and September of 2020, and after having had a chance to review the discovery, including the CCSAO production file in depth, Plaintiff's counsel reached out to the CCSAO to determine why recordings relating to Confidential Overhears "COH" (i.e., a court authorized recording obtained either a wire or a recorded phone line) were withheld on the basis of a privilege. As the parties learned more about what was withheld on the basis of the privilege, the parties requested the full breadth of overhear applications and related materials from the CCSAO (e.g., before a COH is obtained, law enforcement is required to submit an affidavit for judicial consideration; court orders follow the affidavit directing the use; also, in addition to Confidential Overhears, law enforcement may also use other means of surreptitiously obtaining information such as Electronic Surveillance Orders and Pen Registers all of which follow the same judicial oversight). In addition, the CCSAO file was heavily redacted, withholding vital witness information necessary to further the parties' investigation and discovery processes. Defendants' counsel requested that the CCSAO reproduce the file with such information unredacted and obtained through a motion herein an order allowing the CCSAO to do so under the Confidentiality Protective Order in this case. Defendants have engaged the CCSAO in Rule 37.2 discussions to obtain the file materials but have been advised of continued delays because of CCSAO office closures due to COVID.

8. Following conversations held pursuant to Local Rule 37.2 with the State's Attorney assigned to the matter, and with no less than 50 emails later, the parties filed a joint motion on October 22, 2020 in front of Judge Leroy Martin of the Circuit Court of Cook County, Criminal Division to release all evidence relating to the overhears that had been withheld by the

4

CCSAO. The Court ruled in favor of releasing the evidence and entered an Order dated November 10, 2020. *See* Dkt. 97-3. Thereafter, the State's Attorney assigned to the matter wanted clarification from Judge Martin regarding releasing certain materials related to an overhear documented as privileged in the CCSAO log. As such, the parties appeared in front of Judge Martin on two more dates. Judge Martin finally ruled, on November 17, 2020 that the materials at issue were covered under his prior order. The CCSAO produced some of the previously withheld records on January 22, 2021, including confidential overhear tapes which appeared to indicate that the Baker homicide investigation was linked to a larger multijurisdictional investigation into the Black Disciples street gang. Those recordings were produced by way of a photograph—so we could see what existed—on February 19, 2021, but then the actual recordings were not produced until March 23, 2021 because the CCSAO needed to have them copied in a format that could be sent electronically.

9. It then took additional coordination and patience to address continued delays and representations by the CCSAO that it could not produce the remainder of the paper files ordered to be released in Judge Martin's November 10 Order because it required a review of the physical file, which could not be readily obtained. Finally, Plaintiff filed a Motion to Compel before this Court on March 24, 2021 in order to obtain the remaining relevant, unredacted COH materials that had been ordered disclosed by the criminal court. *See* Dkt. 97 (withdrawn once the CCSAO complied). The parties still await the production of the completely unredacted CCSAO file under the Confidentiality Protective Order.

10. While the parties were in the midst of obtaining the CCSAO documents, discovery on other related issues continued. In his initial discovery requests, Plaintiff had requested from the City all documents that related to the City's use of CIs in the Baker Homicide

5

Investigation, and specifically for documents relating to the known (or presumed) CIs based on the CPD reports. Earlier in the litigation, when this discovery request was responded to in August of 2020, the City indicated that, aside from documents mentioning these persons in the investigative file which had been disclosed, the City found no other responsive documents in its possession. As of August of 2020, without the benefit of unredacted files from the CCSAO, Plaintiff had no further information on the use of these CIs to point to, and had no reason to dispute or question the City's response.

11. Fast forward to the receipt of the CCSAO materials on January 22, 2021, when a fully unredacted memo was disclosed by the CCSAO that indicated that the Baker homicide investigation was linked to a larger multijurisdictional investigation into the Black Disciple street gang.[1] With this document, which definitively identified the use of CIs by law enforcement during the Baker Homicide Investigation, Plaintiff re-engaged in 37.2 discussions about the City's production of documents relating to the use of CIs in the Baker Homicide Investigation. These conversations occurred during the month of February 2021. The City conducted a search within the known locations for such files – the Organized Crime Division and Detective Division - and related that it still could not uncover documents specific to the City's use of CIs in the Baker Homicide Investigation or documents specific to the main players being used as a CI by the City of Chicago. According to the City, the lack of documents on these individuals could indicate any of the following: (1) Files relating to the use of these individuals as CI's were purged pursuant to the City's retention schedule; (2) these individuals were "Cooperating Individuals" and not "Confidential Informants" such that no formal documentation exists for

---

[1] As this document contains potentially sensitive information about CIs, out of an abundance of caution it has not been attached to this filing, but the parties will submit to the Court if requested.

them; or (3) the individuals were Confidential Informants for the Federal Bureau of Investigations, and not the CPD.

12. Based on that information, Plaintiff's counsel timely issued a subpoena and *Touhy* letter to the FBI for its file on the Baker Homicide Investigation on March 8, 2021. Following through with the federal *Touhy* requirements took time, and Plaintiff promptly obtained a court order allowing for the release of the materials when it was requested by the FBI attorney that one was required. *See* Dkt. 104.

13. Around the same time, Plaintiff also served a subpoena for documents on the Illinois State Police for its full file on the Baker Homicide Investigation, as well as documents the ISP is statutorily required to maintain on Confidential Overhears. The full ISP file had not been requested previously in the litigation because: (a) ISP reports were contained in the CPD Investigative File and it appeared from those documents that ballistic and latent print evidence was not relevant to the civil litigation (e.g., the evidence was collected, but did not implicate a suspect, or have ballistic match to another crime, and did not implicate Plaintiff). However, the Operation Pickup Memo made clear that there were cross-overs in multiple, ongoing investigations. The documents were recently received on April 19, 2021 (after communication with attorneys for the ISP who requested additional time) and shed light on multiple suspects who were investigated for shootings over the course of numerous interconnected crimes. Additionally, the response established that CPD had requested ISP conduct ballistics testing to determine if the firearm used in the Baker homicide matched the firearm used in other crimes.

14. As before, discovery on other matters were continuing during this same time frame. In and around late January of 2021, the City of Chicago produced additional document disclosures relating to CPD investigations that related to, and involved the same main players, as

the Baker Homicide, which then took time and coordination to review. In addition, and following up on the information contained in the Operation Pickup Memo, Plaintiff also served a subpoena on the CCSAO for case files that were connected to the Baker Homicide, and a second subpoena to the CCSAO for documents reflecting funds and consideration paid to key witnesses identified and/or suspected to be CIs in the Baker Homicide. Those subpoenas remain pending, but not for lack of effort. Plaintiff has had multiple exchanges with the SAO assigned to the subpoenas and is in the process of narrowing the scope of the subpoenas and negotiating with additional information obtained through FOIA about where records of consideration may be maintained.

15. Plaintiff's counsel also generally continued their review of the case file, as occurs throughout litigation, and followed up on outstanding issues; e.g., engaged in 37.2 discussions regarding the Individual Defendants' un-responded to subpoena to FCI Pekins and compelled the Defendants to withdraw their subpoena to the federal prison on the basis that it was overbroad; that motion was withdrawn when the Defendants complied. *See* Dkts. 100, 105. Plaintiff further followed up on the Individual Defendants' subpoena to Plaintiff's post-conviction attorney. That file was received on (via U.S. Postal Mail) on March 3, 2021, reviewed for privilege by Plaintiff's counsel, and disclosed to the defense as it was reviewed on March 18 and March 26, 2021.

16. The parties had repeated discussions agreeing that all of the information outlined above—the interconnectedness between the Baker Homicide Investigation, the remaining Individual Defendants, Plaintiff and relevant third-parties disclosed by parties —were necessary to obtain, review, and fully understand before beginning the remaining depositions. Although we have different positions, all parties would have been prejudiced if depositions were taken without the full scope of information. For example, if Plaintiff had taken the depositions of the remaining

Individual Defendants based on the Chicago Police Department investigative files alone, he would not have been able to confront them with the fact that some were involved in a federal investigation relating to the Baker Homicide- the whole connection to Operation Pickup was unknown until January of 2021. In January of 2021, when we received this information that opened up a whole new aspect of the case, it was apparent that the parties did not have all of the information—the CCSAO kept withholding unredacted documents, and the parties had not had the chance (due to Covid restrictions) to view the impounded evidence. The parties do not agree on most everything relating to the evidence we received, but we do agree that all counsel has been diligent in running down every lead and obtaining all necessary documents.

17. So too with third-party depositions. Putting aside the fact that COVID restrictions made travel nearly impossible for many months of this litigation, we only recently—in March of 2021—received audio recordings of third-parties involved in this matter. We could not have effectively represented our clients when we knew that there were audio recordings available from these witnesses, but had not yet obtained them. Either we would have missed our opportunity to ask directly relevant questions about their involvement in the Baker Homicide, or we would have had to double our discovery efforts to take multiple depositions of these witnesses.

18. To be clear, the parties believe that we are in the position to begin taking depositions and further believe they can be completed in the next four months. In fact, that process has already begun: Plaintiff served a Notice of Deposition on the remaining Defendants (Clisham, Montgomery, McNally, Przepiora, McDermott, and Boudreau) all of whom are involved in the COH recordings and Operation Pickup Memo.

19. Plaintiff also served subpoenas for depositions on the Assistant State's Attorneys who were assigned to the conviction integrity unit on or around March 29, 2021 and worked on Plaintiff's post-conviction matter. Again, Plaintiff's attorney has been in contact with the SAO assigned to coordinate these depositions and represent the deponents and continues to make efforts to obtain these depositions.

20. Plaintiff also served a Rule 30(b)(6) Notice on the City of Chicago on March 29, 2021. The City objected to the Notice and the parties have conferred on the issues that were raised by the City. The parties anticipate that this discovery dispute will need to be raised with the Court, but without fully going through the 37.2 process, the issue is not yet ripe for consideration.

21. Last, on April 13, 2021, the parties were finally able to view the evidence that was impounded by the circuit court following trial, an event that was well over 5 months in the making. That is a discovery task that had been put on hold or delayed numerous times because of the pandemic, and beyond the parties' control. It was just this month that the parties were finally able to view and copy all of the impounded trial evidence, including critical documents relating to eyewitnesses, that were not otherwise available to them in the documents previously produced or obtained from third parties. Now that this evidence is available, the parties intend to issue subpoenas for these witnesses (McGee and Fields), both of whom live out of state, if the Court allows this extension.

22. Last, Plaintiff remains incarcerated and was recently transferred to Terre Haute. That facility is now allowing attorney visits. As of this month, all undersigned counsel has been fully vaccinated and feel comfortable traveling to a prison for an in-person deposition.

**GOOD CAUSE EXISTS TO EXTEND THE CURRENT DISCOVERY DEADLINE**

23. As set forth above, the parties have been working diligently, through unusual circumstances – a pandemic that caused extraordinary impact on both work and private lives and on a complex matter in which the bulk of events occurred decades ago.

24. The parties could not complete the depositions in the current discovery timeframe because, as discussed above, neither side had all of the known available evidence, which they have worked both diligently and collaboratively to obtain, and further agreed the material was necessary to have before beginning the remaining depositions.

25. There are no dates set for dispositive motions or experts and so no deadlines will be affected by this extension and all parties agree that prejudice will result in their ability to prosecute/defend their respective case without this extension.

26. To the extent the Court has questions or concerns following this motion, the parties respectfully request that the Court set an in-person hearing for further discussion.

WHEREFORE, the parties jointly submit that good cause exists to extend the current fact discovery cut-off and respectfully request a discovery extension until August 30, 2021, or any other date set by the Court, to complete discovery in this matter.

Respectfully Submitted,

/s/ Julie M. Goodwin
*One of Plaintiff's Attorneys*

Arthur Loevy
Jon Loevy
Julie Goodwin
Loevy & Loevy
311 N. Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900

        Jennifer Blagg
        Blagg Law
        1333 W. Devon Ave., Suite 267
        Chicago, Illinois 60660
        (773) 859-0081

        CELIA MEZA UTRERAS
        Acting Corporation Counsel of the City of Chicago

        /s/ Lisa M. Meador
        *Attorney for Defendant City of Chicago*

        James G. Sotos
        Jeffrey N. Given
        Lisa M. Meador
        Sara J. Schroeder
        The Sotos Law Firm, P.C.
        141 W. Jackson Blvd., Ste. 1240A
        (630) 735-3300


        /s/ Stacy A. Benjamin
        *One of the Defendant Officers' Attorneys*

        Special Assistant Corporation Counsel
        Eileen E. Rosen
        Stacy A. Benjamin
        Theresa B. Carney
        Brittany D. Johnson
        Rock Fusco & Connelly, LLC
        321 N. Clark Street, Ste. 2200
        Chicago, Illinois 60654
        (312) 494-1000

## **CERTIFICATE OF SERVICE**

    I, Julie Goodwin, an attorney, hereby certify that I served the foregoing Renewed Joint Motion to Extend Discovery Deadlines on all parties of record via the Court's CM / ECF filing system on April 30, 2021.

                                                    /s/ Julie M. Goodwin