**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **BERNARD MIMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 18 C 7192** |
| | ) | |
| **v.** | ) | **Magistrate Judge Jeffrey Cole** |
| | ) | |
| **THE CITY OF CHICAGO, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

**INTRODUCTION**

"All good things, including discovery, must come to an end."

*U.S. ex rel Taylor v. Hicks*, 513 F.3d 228, 238 (5th Cir. 2008)

The defendants have filed a "Renewed Motion For Leave To Conduct Limited And Narrow Discovery Relating To Witness Lithia Henderson Outside Of The Fact Discovery Schedule And To Strike Or Allow Discovery Relating To Declaration Of Investigator Chekingo." [Dkt. #143]. In response, the plaintiff has filed a "Motion to Deny Defendants' Motion On The Basis That Discovery Is Closed." [Dkt. #144].

Discovery is indeed closed; it has been closed since August 30, 2021, as Judge Seeger stressed in his Order of September 8. 2021. [Dkt. #133]. Judge Seeger specifically ordered defense counsel, who had proposed deposing an additional witness, to "notice the motion before [him] in the first instance." Judge Seeger then told counsel that he would review the motion and may refer the motion to me if warranted. [Dkt. #133]. The defendants ignored that pointed and straightforward instruction and filed their motion to reopen discovery on October 1, 2021, [Dkt. #143] without

noticing it before Judge Seeger, as he had explicitly instructed or otherwise bringing it to his attention.[1] [Dkt. #133]. It was not until October 13, 2021, that the defendants finally brought the motion to Judge Seeger's attention. [Dkt. #143]. He said that the defendants' renewed motion to reopen discovery, as well as plaintiff's motion to enforce his discovery deadline, are now both before me. [Dkt. #146]. For the following reasons, the defendants' motion to reopen discovery [Dkt. #143] is denied; plaintiff's motion to enforce Judge Seeger's deadline and deny defendant's motion to reopen discovery [Dkt. #144] is granted; and the defendant's motion to strike the Chekingo Declaration [Dkt. #143] is granted.

## ARGUMENT

### A.

First of all, it has to be said that, in addition to ignoring Judge Seeger's instructions about noticing motions to reopen discovery, the defendants have also seemingly chosen to disregard the comments in my Order of September 15, 2021. That Order indicated that, as both sides had left some of their discovery work until far too late – not the first time that has occurred in this case – it would behoove them to work something out amicably rather than impose their problems on the court after the discovery deadline – the fourth one the parties had been allowed to select and have failed

---

[1] Such instructions may not seem like much, but when parties follow them – as they should – they save time for the court. Most judges bifurcate their cases, with magistrate judges handling discovery. Many of those judges bifurcate that a step further by retaining authority to set deadlines in discovery. When litigants do not indicate whether a motion is being brought before the assigned district judge or magistrate judge, one or both of those judicial officers have to take the extra step of sifting through all the motions filed that day to determine which belongs to whom. It takes up valuable time, and can create confusion in a docket, as it has done in this case previously. Again, the defendants probably felt that, in this instance, what could the harm be. But multiply that over all the cases on a court's docket, and the time adds up and hurts other litigants requiring the attentions of judge or magistrate judge to resolve the various issues that they, too, are unable to resolve. *See, e.g., Chicago Observer, Inc. v. City of Chicago*, 929 F.2d 325, 329 (7th Cir. 1991)("Litigation is costly not only for the litigants but also for parties in other cases waiting in the queue for judicial attention.").

2

to meet – had passed. [Dkt. #138]. After all, this case is now in its fourth year, and the parties have had more than ample time to conduct and complete fact discovery. And, after all, Local Rule 37.2 demands that parties meet and confer in a good faith attempt to work ought their discovery disagreements. With both sides in essentially the same boat in this instance, this case presented a golden opportunity for the parties to do just that, with each side potentially getting something it wanted. The Order made it clear that, after well over two years of discovery, that was likely the only way either side would be allowed to get more. With discovery closed, neither side was entitled to anything, after all.

But the defendants weren't interested in compromise, which was their prerogative. Defendants detail their efforts to comply with Local Rule 37.2 and follow the advice of the September 15 Order in a footnote:

> the parties met and conferred on September 22, 2021 at which time Plaintiff maintained his objection to the relief sought by Defendants in this motion. While Plaintiff offered to withdraw the objection if Defendants would agree to 30(b)(6) depositions relating to various vague, irrelevant topics about files and reports from 20 years ago, (and which was not even sought in Plaintiff's motion to compel – Dkt. 130 - which focused only on supplementation to written discovery), Defendants could not agree to discovery that result[s] in yet far more motion practice and delay in completing fact discovery. Especially over matters that could have long been addressed during fact discovery schedule set by the court.

[Dkt. #143, at 2 n.1]. That's not true, according to the plaintiff's motion to enforce Judge Seeger's fact discovery deadline. The plaintiff says he proposed a single deposition to address whether additional documents exist that are responsive to plaintiff's discovery requests given the August 30, 2021 production of the Organized Crime Division Report. [Dkt. # 144]. Contrary to defendants' footnote, that was, essentially, the topic of plaintiff's own motion to reopen discovery back on September 7th, although it sought to get at the information through interrogatory answers rather than

a deposition. [Dkt. #130]. As such, the plaintiff's offer of "dep-for-dep" was an excellent, time-saving and judicial resource-saving compromise.

But, unfortunately, it was one the defendants rejected out-of-hand; and so here we are in a situation that has become far too common in far too many cases: discovery has closed, and not only are the parties not finished with discovery, they are not finished arguing about it. No wonder Judge Posner has lamented, "protracted discovery, [is] the bane of modern litigation." *Rossetto v. Pabst Brewing Co., Inc.,* 217 F.3d 539, 542 (7th Cir.2000). Local Rule 37.2 employs the phrase "good faith" for a reason; it has meaning. It is not evidenced by parties "adamantly clinging to the positions with which they began." *Infowhyse GmbH v. Fleetwood Grp.*, 2016 WL 4063168, at *1 (N.D. Ill. 2016); *see also Harper v. Cent. Wire, Inc.*, 2021 WL 4472604, at *1 (N.D. Ill. 2021); *Kosek v. Ethicon, Inc.*, 2020 WL 6203310, at *4 (N.D. Ill. 2020); *Generation Brands, LLC v. Decor Selections, LLC*, 2020 WL 6118558, at *3 (N.D. Ill. 2020); *Chicago Reg'l Council of Carpenters Pension Fund v. Celtic Floor Covering, Inc.*, 316 F.Supp.3d 1044, 1046 (N.D. Ill. 2018)("An ultimatum on one side, met with steadfast defiance on the other, is not a good faith discussion."); *W. Bend Mut. Ins. Co. v. Zurich Am. Ins. Co.*, 308 F. Supp. 3d 954, 958–59 (N.D. Ill. 2018)("Chatting for a bit about a dispute and maintaining an untenable position at worst or a tenuous position at best, is not engaging in a good faith meet and confer.").

The court, of course, was not on hand to observe the parties' negotiations; of course, courts never are. But, given the fact that the defendants' renewed motion to reopen discovery is essentially unchanged from its first try back on September 14th, it cannot be disputed that the plaintiff offered a compromise and that the defendants steadfastly refused to budge. So, the defendants' second try at reopening discovery is under a disadvantage from the start.

4

The motion suffers from other flaws as well. Under Fed.R.Civ.P. 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent." The 'good cause' standard can take in a number of considerations, but primarily considers the diligence of the party seeking amendment. *MAO-MSO Recovery II, LLC v. State Farm Mutual Automobile Insurance Company*, 994 F.3d 869, 878 (7th Cir. 2021); *Trustmark Insurance Company v. General & Cologne Life Reinsurance of America*, 424 F.3d 542, 553 (7th Cir. 2005). Defendants do not address the question of whether they have been diligent in discovery. As such, all we know is that the defendants (along with the plaintiff) have been allowed to choose four discovery deadlines and have failed to meet any of them. That does not exactly scream – or even whisper – diligence. Moreover, the facts surrounding the defendants' lack of concern regarding the witness they want to reopen discovery to depose does not sound any better or any more diligent.

The deposition that defendant wants to reopen discovery for in this three-year-old case is that of Lithia Henderson.[2] Defendants engage in a little misdirection regarding their knowledge of this

---

[2] Defendants tell the court that Ms. Henderson was interviewed about a year after the Baker murder by Cold Case Unit Defendant Detective Przepiora following the interview of her sister, Taushandra Crafton. Crafton claimed that Henderson could verify her story (which Przepiora was skeptical of) that Crafton, (who also claimed to have been in a clandestine relationship with the victim Baker) was riding on a bus in the area and witnessed plaintiff, Bernard Mims, a person she knew well, shoot Baker with an AK-47. According to the defendants' reports, Ms. Henderson told police that the day after the shooting Crafton told her she witnessed plaintiff shoot Baker and saw another individual, Michael Sardin, running from the scene.

In the early evening of August 25, 2021, plaintiff's counsel served the defendants' counsel with a deposition subpoena for Ms. Henderson which listed the deposition date and time as August 25, 2021 at 9:00 am at the offices of Loevy & Loevy. Obviously, that was an utterly useless gesture, but in an e-mail accompanying the subpoena, plaintiff's counsel explained that arrangements were being made with the Cook County Jail for Ms. Henderson's deposition to proceed remotely on August 27, 2021, 2 days later. She had been served a week earlier. As it turned out, Ms. Henderson refused to appear for the deposition. But, on the day discovery was to end, August 30, 2021, plaintiff's counsel served defendants' counsel with a Declaration from Ms. Henderson dated August 29th. In the Declaration, Ms. Henderson claims she and and
(continued...)

witness. The defendants open by saying that the plaintiff never disclosed Ms. Henderson as a witness. [Dkt. #143, at 2]. That might be true, but it turns out to be not terribly significant. A bit later, the defendants get more dramatic, claiming that her "name did not even come up once in discovery until Defendant Przepiora was deposed on August 9, 2021." [Dkt. #143, at 3]. That is a blatant misrepresentation – and not a very crafty one as the defendants, themselves, concede *they* disclosed her as a witness. [Dkt. #143, at 3]. In fact, she was interviewed by one of the defendants, Detective Przepiora, as part of the Baker homicide investigation. [Dkt. #143, at 3; #137-1, Page 29 *et seq.*/148]. So, we have a motion to reopen discovery based on a party purportedly being surprised on the last day of discovery by a witness *they* disclosed and that they have known about *for twenty years*. That, to put it colloquially, is a "big ask."

Obviously, it would probably be impossible for a party to find a case to support such a motion, and defendants certainly haven't managed to do so. [Dkt. #143, at 8-9]. In *Mendez v. City of Chicago*, 2021 WL 872955 (N.D. Ill. 2021), the court allowed depositions following the close of discovery due to "'scheduling issues and disagreements'" [that] appear[ed] to have 'prevented certain depositions on both sides.'" 2021 WL 872955, at *3. Here, the defendants – despite disclosing Ms. Henderson as a witness – never sought to schedule any deposition. For three years, they appeared to be completely disinterested in what she might say. *In Travelers Property Casualty Ins. Co. v. Service Experts Heating & Air Conditioning, LLC*, 2014 WL 4947466 (C.D. Ill. 2014), the plaintiff was afforded a second opportunity to depose the defendant's expert because that expert

_____

[2](...continued)
her boyfriend Dimitrius Milon witnessed the Baker homicide and that they both spoke with detectives at the scene on the day of the shooting and during subsequent interviews, and identified the plaintiff as the shooter, along with along with another participant, "Reddy-Red." [Dkt. #143].

surprised the plaintiff at his first deposition with material that had not been a part of his expert report. 2014 WL 4947466, at *4. *Doe v. Society of Missionaries of Sacred Heart*, 2014 WL 51333, at *2–4 (N.D. Ill. 2014) involved an even bigger, surprise. There, the court allowed the defendant to depose a handful of witnesses after the close of discovery based on the plaintiff's last-minute production of 148 emails the plaintiff had wrongfully withheld in discovery. 2014 WL 51333, at *2–4. Again, Ms. Henderson was no surprise to the defendants. Finally, in *American Hardware Manufacturers Association v. Reed Elsevier, Inc.*, 2008 WL 4876845, at *3 (N.D. Ill. 2008), new information was key to the courts decision to allow the defendant to depose a witness after the close of discovery: newly discovered documents revealed the witness's participation in underlying negotiations. 2008 WL 4876845, at *3. This case is dramatically different, and proves the wisdom of the Seventh Circuit's admonition: "defer no time, delays have dangerous ends." *United States v. Golden Elevator, Inc.,* 27 F.3d 301, 302 (7th Cir.1994).

Clearly, none of the cases the defendants cite in their motion so much as hint that their motion should be granted. And arguments made without support of pertinent authority do not merit consideration. *See, e.g., Page v. Democratic Nat'l Comm.*, 2 F.4th 630, 638 (7th Cir. 2021); *Shipley v. Chicago Bd. of Election Commissioners*, 947 F.3d 1056, 1063 (7th Cir. 2020). ("Arguments that are underdeveloped, cursory, and lack supporting authority are waived."); *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016)("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."); *R.J. Reynolds Tobacco Company v. Cigarettes Cheaper!,* 462 F.3d 690 (7th Cir. 2006). Indeed, defendants ought to have taken heed of what the court said in *American Hardware* when denying the defendant's *other* request for a post-deadline deposition:

> It should be noted that the Court acknowledges that a discovery deadline should not prohibit, in every circumstance, the taking of a deposition. . . . This case, however, presents a long and arduous discovery period with multiple orders reminding the parties that "under no circumstances will the discovery deadlines be extended," and "the parties must carefully select who will sit for a deposition." Because this case is one where, if the Court was not involved, discovery would never close, [defendant's] motion for leave to depose yet another witness, . . . must be denied.

2008 WL 4876845, at *3.

The court could have been describing this case. "Long and arduous discovery period"? Check: discovery began well over two years ago on June 3, 2019. [Dkt. #40]. Multiple extensions? Check: a three-month extension after fifteen months of discovery, from September 30, 2020 to December 16, 2020 [Dkt. ##66, 85]; four more months from December 16, 2020 to April 30, 2021 [Dkt. #94]; and four more months from April 30, 2021 to August 30, 2021. [Dkt. # 111]. Reminders about impending deadlines and advice to take them seriously? Check. *See, e.g.,* [Dkt. #94 (directing the parties to continue their efforts in order to meet the "revised deadline.")]; [Dkt. #109 ("Overall, the Court has significant concerns about whether the parties pursued fact discovery in a diligent manner. . . . the parties should know that the Court is skeptical of the request, and any future motion must make a much stronger showing than the one currently before the Court.")]; [Dkt. #111 ("This is the final extension, so the parties must plan ahead and prepare accordingly.")].

And, most assuredly, if the court did not step in, discovery would go on interminably. In fact, defendants are not just asking for a lone deposition. They also want discovery from the Cook County Jail: Ms. Henderson's phone and visitor logs and recorded phone calls for the month of August, 2021. In all likelihood, that discovery and the inevitable deposition will trigger a desire for more. Assurances from parties that "this will be the last time" an extension of discovery will be sought are all too common and, all too often have a hollow ring and discovery plods inexorably along until the

8

lawyers think they have had enough. But the system was not designed to function with the judges as, in effect, mere inert bystanders. Indeed, failure of lower courts to properly supervise and monitor discovery are continually cited as a source of increased costs and abuses in the discovery process by plaintiffs' and defendants' lawyers, alike. *See* Frank H. Easterbrook, *Discovery as Abuse*, 69 B.U.L.Rev. 635, 639 (1989). *See, e.g., Montanez v. Simon*, 755 F.3d 547, 552 (7th Cir. 2014); *Oliveri v. Rodriguez*, 122 F.3d 406, 409 (7th Cir. 1997); *Malautea v. Suzuki Motor Co. Ltd.*, 987 F.2d 1536 (11th Cir. 1993)(Roney, J., concurring); *Miller UK Ltd v. Caterpillar, Inc.*, 17 F.Supp.3d 711, 721-22 (N.D.Ill. 2014). *See also*, Victor Marrero, *The Costs of Rules, The Rule of Costs*, 37 Cardozo L.Rev. 1599 (2016). *Cf. Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 411–412 (7th Cir.2010); *Continental Insurance. Co. v. Chase Manhattan Mortgage Corp.*, 59 Fed.Appx. 830, 840 (7th Cir.2003).

Once control of the discovery schedule effectively is unwittingly allowed to pass into the ultimate control of one or both parties, even straightforward cases can spiral out of control. Judicious use of the court's case management authority can, we are repeatedly told, "help to check overlawyering. Reasonable limits on discovery... can effectively channel the efforts of counsel before excessive time and resources are expended." *Montanez v. Simon*, 755 F.3d 547, 552 (7th Cir. 2014). Indeed, excessive pretrial discovery has rightly been called "the bane of modern litigation." *Rossetto v. Pabst Brewing Company, Inc.*, 217 F.3d 539, 542 (7th Cir. 2000). And judges are to be commended rather than criticized for keeping tight reins on it. *Oliveri v. Rodriguez*, 122 F.3d 406, 409 (7th Cir. 1997).

And so, fact discovery in this case ought not and will not be allowed to go on indefinitely, with the ending point to be determined by one or the other of the parties. For all of the foregoing

reasons – defendants' failure to compromise in good faith, defendants' long knowledge of the witness, defendants' failure to inquire of a witness *they* disclosed, defendants' failure to support their motion with cases, the multiple extensions, and the long period of discovery all counsel against the defendants' motion to reopen discovery and accordingly it is denied.

### B.

That leaves the mysterious Cindy Chekingo, who is apparently plaintiff's counsel's investigator. Plaintiff produced a Declaration from her, dated August 25, 2021, reflecting a two hour interview by Plaintiff's counsel, Jennifer Blagg, of eyewitness, Wallace Fields, on June 23, 2021. Mr. Fields was scheduled for a deposition the next day on June 24, 2021, but he failed to appear. Obviously, August 25th was far too late to spring this on the defendants and the court. That Declaration could have, and ought to have, been produced at the end of June. *See* Fed.R.Civ.P. 26(e)(1)("A party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or request for admission--must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, . . . ."). Moreover, Ms. Chekingo was never identified by plaintiff as a witness and, unlike Ms. Henderson, certainly comes as a complete surprise to the defendants and the court. Consequently, the defendants' motion to strike that Declaration is granted. *See* Fed.R.Civ.P. 37(c)(1)("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").

Finally, defendants also object to the production of the Chekingo Declaration on the basis that it is hearsay and thus not properly within the scope of discovery. [Dkt. #143, at 11-12]. The argument is, at best, premature and, given the clarity of the Federal Rules of Civil Procedure governing discovery, is also an odd one to make. Whether a piece of evidence is hearsay or not depends on the purpose for which it is offered. Rule 801(c), Federal Rules of Evidence. In other words, whether something is or is not hearsay will depend upon the evidentiary purpose for which it is offered. *See, e.g., United States v. Green*, 258 F.3d 683, 689 (7th Cir. 2001). If offered for some relevant, non-substantive purpose, the evidence, if relevant and not subject to exclusion under Rule 403 will not be barred by the hearsay rule. *See generally* J. Cole, *The Federal Hearsay Rule: You Can't Believe Everything You Hear*, 34 LITIGATION 51 (Spring 2008). But, more importantly, evidentiary rulings are not made during discovery, Fed.R.Civ.P. 26(a)(3)(B), and parties routinely seek, and exchange, evidence even though at some point in the future it may run afoul of the hearsay rule. Simply stated, evidence relevant to the particular case is properly discoverable. Thus, Federal Rules of Civil Procedure 26(b)(1) must not be overlooked. It provides that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Put another way, invocation of the hearsay rule as a bar to discovery is improper and necessarily premature. *See* Rule 802, Federal Rules of Evidence; *Kuttner v. Zaruba*, 819 F.3 970, 980 (7th Cir. 2016); *Masarik v. United States*, 630 Fed. Appx. 630 (7th Cir. 2016).

## CONCLUSION

With characteristic insight, Judge Moran has emphasized that "the discovery rules are not a ticket to an unlimited never-ending exploration of every conceivable matter that captures an attorney's interest." "Parties are entitled to a reasonable opportunity to investigate the facts-and no

more." *Vakharia v. Swedish Covenant Hosp.*, 1994 WL 75055, at *2 (N.D. Ill. 1994). In this case, "[t]here was enough discovery here to choke a horse." *Walker v. Sheahan*, 526 F.3d 973, 978 (7th Cir. 2008); *Olcott v. Delaware Flood Company*, 327 F.3d 1115 (10th Cir. 2003); *Montanez, supra.* "Enough is enough." *Williams v. Shinseki*, 373 F.App'x 611, 614 (7th Cir. 2010). *Accord Walker*, 526 F3d at 978; *Banos v. City of Chicago,* 398 F.3d 889, 893 (7th Cir. 2005); *Olcott*, 327 F.3d at 1115.

ENTERED: _____
                    UNITED STATES MAGISTRATE JUDGE

**DATE:** 10/28/21

12